## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **SUNDEE FARR**, | |
| *Plaintiff,* | |
| v. | Civil Action No.:   4:23-cv-01585 |
| **CENTENE CORPORATION** and **CENTENE MANAGEMENT COMPANY, LLC**, | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

Plaintiff Sundee Farr ("Plaintiff") files this Complaint for damages against Defendants Centene Corporation ("Centene") and Centene Management Company, LLC ("CMC") (collectively, "Defendants") for discriminating against her on the basis of her religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. ("Title VII") and the Missouri Human Rights Act, Mo. Code Regs. tit. 8 § 60-3.050 ("MHRA"), and in further support thereof, alleges as follows:

### PRELIMINARY STATEMENT

"Violate your sincerely held religious beliefs or you lose your job, even if you are working from home." There is perhaps no greater textbook example of the conduct Title VII and the Missouri Human Rights Act expressly prohibit—but unfortunately, this is the exact course of conduct that Centene and its subsidiary company, Centene Management Company LLC (collectively, "Centene" or "Defendants") engaged in and the basis of this action.

Prior to being fired, Ms. Farr served Centene as its Director of Customer Service—a position in which Ms. Farr served Centene in a 100% remote capacity for nearly *two years* before her termination. Yet after twenty-three (23) months demonstrating her ability to perform the essential functions of her job at or in excess of Centene's expectations, she was fired because of her sincerely held religious beliefs.

Of course, Centene indisputably could have accommodated Ms. Farr without enduring an undue hardship; indeed, Ms. Farr was able to work remotely for two years without issue and no undue hardship ever arose. Centene's customer service department even works remotely to this day.

Yet in August of 2021 and for reasons unknown, Centene refused to permit Ms. Farr to work remotely without becoming vaccinated and provided her until December 31, 2021 to become "fully vaccinated" — even though, by definition, remote work makes it impossible for Ms. Farr to contract or transmit COVID-19 to any colleague, co- worker, contractor, or third-party that conducts business with Centene while she worked within the confines of her own home. Notwithstanding the arbitrary and futile nature of Centene's remote- worker mandatory vaccination policy, even had this policy made the slightest of sense, Ms. Farr could not comply with Centene's newly implemented condition of employment because her sincerely held religious beliefs conflicted with Centene's newly promulgated mandatory COVID- 19 vaccination policy.

To resolve this conflict, Ms. Farr exercised her First Amendment right to Free Exercise and requested a reasonable accommodation based on her sincerely held

religious beliefs in accordance with her Title VII right to a reasonable accommodation. Unfortunately, Ms. Farr's request was denied, and on February 4, 2022, Centene terminated Ms. Farr because of her sincerely held religious beliefs.

It is for this reason Ms. Farr commences this action, which is properly before this Court, as more fully explained below:

## JURISDICTION AND VENUE

1. This action arises under 42 U.S.C. § 2000e-2 and therefore, jurisdiction is proper pursuant to 28 U.S.C. § 1331 because this claim is a civil action arising under the laws of the United States.

2. This Court also has jurisdiction over this action pursuant to 42 U.S.C. § 1343(a)(4) because it is an action to recover damages or to secure equitable or other relief under an Act of Congress providing for the protection of civil rights.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) & (c) and 42 U.S.C. § 2000e-5(f)(3), in that the events described herein occurred within the District and Centene maintains its headquarters and principal place of business within this District.

4. This Court is authorized to grant Ms. Farr's prayer for relief regarding costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988.

## PARTIES

5. Plaintiff Sundee Farr ("Ms. Farr") is an adult resident of Lampasas County, Texas and a former Centene employee. At the time of her termination, Ms. Farr was employed as Centene's Customer Service Director, and while serving in this

capacity, Centene discriminated against her and retaliated against her on the basis of her religion. Due to Ms. Farr's religion and sincerely held religious beliefs, Centene terminated her on February 4, 2022.

6.     Defendant Centene Corporation is a Missouri corporation that maintains its principal place of business in St. Louis, Missouri and served Ms. Farr's employer[1] from April 21, 2014[2] through February 4, 2022. At all times relevant, Centene employed more than fifty (50) employees and is therefore subject to Title VII and the Missouri Human Rights Act, both of which require employers (such as Centene) to reasonably accommodate their employees' (such as Ms. Farr) sincerely held religious beliefs.

7.     Defendant Centene Management Company LLC ("CMC") is a Missouri corporation that maintains its principal place of business in St. Louis, Missouri, a subsidiary of Centene Corporation, and Plaintiff's former employer. At all times relevant, CMC employed more than fifty (50) employees and is therefore subject to Title VII and the Missouri Human Rights Act, both of which require employers (such as CMC) to reasonably accommodate their employees' (such as Ms. Farr) sincerely held religious beliefs.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.     On February 4, 2022, Centene terminated Ms. Farr.

---

[1] For purposes of this action, Defendants Centene Corporation and Centene Management Company LLC shall be collectively referred to as "Centene" hereinafter. This action is also pled in the alternative, in that any and all allegations herein shall be construed to be pled against Defendants individually as well as jointly and severally.
[2] The start date of April 21, 2014 is the date on which Ms. Farr began working for Ohana Health Plan ("OHP"), which Centene subsequently acquired while Ms. Farr was working for OHP.

9.     Less than 300 days later, on or about October 20, 2022, Ms. Farr timely filed a Charge of Discrimination against Centene with the Equal Opportunity Employment Commission ("EEOC") on the basis of her religion.

10.    On September 13, 2023, the EEOC issued Ms. Farr a Determination and Notice of Rights ("right-to-sue") Letter, which *inter alia* provided that Ms. Farr has ninety (90) days to commence a civil action in federal court.

11.    Under the work sharing agreement between the Missouri Commission on Human Rights ("MCHR") and the EEOC, the Charge Ms. Farr filed with EEOC within statutory time limit was deemed to be filed with MCHR at same time.

12.    Ms. Farr's Charge is therefore deemed to have been timely filed with MCHR.

13.    Ms. Farr was and is entitled to a right-to-sue letter from the MCHR at all times relevant, including at the time this action was commenced.

14.    Ms. Farr need not have her MCHR right-to-sue letter physically in her possession at the time she brought her MHRA claim; rather, she need only be entitled to the MCHR right-to-sue letter to satisfy the MHRA's exhaustion requirement.

15.    Because Ms. Farr timely filed her Charge of Discrimination with the EEOC and the Charge was deemed filed with the MCHR on the same date, because less than 90 days elapsed from receiving her EEOC right-to-sue letter to the date this action was commenced, because more than 180 days elapsed from the date Ms. Farr's MCHR Charge was deemed to be filed and the date Ms. Farr asserted her MCRA

claim, and because Ms. Farr is entitled to an MCHR right-to-sue letter, all conditions precedent to maintaining her Title VII and MCHR claims have been satisfied.

## STATEMENT OF FACTS

16.     In Januaru 2020, Centene acquired Ms. Farr's employer, Ohana Health Plan. As a result of the merger, Ms. Farr became a Centene employee in 2021 and at all times relevant, Centene and Ms. Farr maintained an employer-employee relationship.

17.     This employer-employee relationship continued at all times relevant, including up to and including February 4, 2022, at which time Centene terminated Ms. Farr's employment.

18.     At the time Ms. Farr began working for Centene, it did not require its employees to become vaccinated against COVID-19.

19.     In August or September of 2021, Centene advised Ms. Farr that it now required its employees to become vaccinated against COVID-19 as a condition of continued employment.

20.     Under Centene's newly promulgated mandatory COVID-19 vaccination policy, Centene demanded its employees become "fully vaccinated" against COVID-19 on or before December 31, 2021. Any employee without a Centene-approved religious or medical accommodation to its mandatory COVID-19 vaccination policy who remained unvaccinated as of December 31, 2021 would be terminated.

21.    On or about September 12, 2021, Ms. Farr notified Centene of her sincerely held religious beliefs and the conflict that existed between her sincerely held religious beliefs and Centene's mandatory COVID-19 vaccination policy.

22.    On or about September 12, 2021, and pursuant to her rights under Title VII and the Missouri Human Rights Act, Ms. Farr submitted to Centene a request for a religious accommodation to its mandatory COVID-19 vaccination policy based on her sincerely held religious beliefs.

23.    As early as September 12, 2021, Centene knew about Ms. Farr's sincerely held religious beliefs and was otherwise placed on notice of Ms. Farr's sincerely held religious beliefs and the conflict between her beliefs and Centene's mandatory vaccination policy.

24.    Prior to her termination, Ms. Farr informed Centene and placed Centene on notice that she is a religious woman with sincerely held religious beliefs that conflicted with Centene's mandatory COVID-19 vaccination policy on multiple occasions.

25.    Specifically, Ms. Farr informed Centene of her sincerely held religious beliefs that require her to keep her body pure as it is a temple of the Holy Spirit. Ms. Farr also informed Centene that she sincerely believes that abortion is a sin and because of her knowledge that each of the COVID-19 vaccines available at all times relevant were produced, manufactured, derived, and/or created through the use of aborted fetal cell line tissue, Ms. Farr's religion and sincerely held religious beliefs require that she refuse any injection of such substances into her body.

26.    Ms. Farr's religion and sincerely held religious beliefs require her to value what she puts into her body because she was made in the image of God, and Centene's mandatory COVID-19 vaccination policy conflicted with this belief not only in light of the above, but also, because Ms. Farr sincerely believes that her religion and faith require her to heed to the direction of the Holy Spirit, which requires her to keep her body pure as her body is a temple of the Holy Spirit.

27.    Ms. Farr's religion and sincerely held religious beliefs require her to act in a manner that is just and right. This is found in Scripture, which states, "Conscience is a law of the mind; yet [Christians] would not grant that it is nothing more; . . . [Conscience] is a messenger of him, who, both in nature and in grace, speaks to us behind a veil, and teaches and rules us by his representatives."

28.    Ms. Farr informed Centene that her sincerely held religious beliefs are made clear in Church teachings, among which include the teaching that "Man has the right to act in conscience and in freedom so as personally to make moral decisions. He must not be forced to act contrary to his conscience. Nor must he be prevented from acting according to his conscience, especially in religious matters."

29.    As such, Ms. Farr's sincerely held religious beliefs conflicted with Centene's mandatory vaccination policy, and due to this conflict, Ms. Farr's sincerely held religious beliefs prohibited her from complying with Centene's policy requiring her to become vaccinated.

30.    Ms. Farr informed Centene of the above beliefs in writing prior to her termination.

31.     Centene knew of the above-mentioned religious beliefs prior to terminating Ms. Farr.

32.     Centene knew Ms. Farr sincerely held and sincerely believed the above-mentioned religious beliefs at all times relevant, including at the time she submitted her religious accommodation request.

33.     Centene knew of the above-mentioned religious beliefs prior to refusing to accommodate Ms. Farr and prior terminating her employment.

34.     The above-mentioned religious beliefs are not merely a "purely personal preference" but rather, as stated in her religious accommodation request that she is required to adhere to her religion and sincerely held religious beliefs and that she is prohibited from complying with Centene's mandatory vaccination policy.

35.     Ms. Farr did not "choose" not to comply with Centene's mandatory vaccination policy, but rather, her religion, the Church's teachings, and her sincerely held religious beliefs required her to abstain from receiving any of the available COVID-19 vaccines.

36.     Ms. Farr's aforesaid sincerely held religious beliefs do no need to be acceptable, logical, consistent or comprehensible to others, including Centene.

37.     Ms. Farr did not make her own standards; rather, Ms. Farr was prohibited from receiving any of the available COVID-19 vaccines because of her sincere beliefs in the religious teachings set forth by the Church, her Christian faith, and her religion.

38.     Ms. Farr's Christian faith requires her to refuse the vaccine.

9

39.     Ms. Farr did not have a choice as to whether she received the vaccine, as she was prohibited from doing so based on her sincerely held religious beliefs.

40.     In lieu of vaccination, Ms. Farr suggested various accommodations and advised Centene that she was amenable to *inter alia* continuing to work for Centene in a remote capacity.

41.     Centene permitted Ms. Farr to work remotely for twenty-three (23) months, and for that nearly two-year period, Ms. Farr did so without issue. In fact, Ms. Farr's performance exceeded her employer's expectations, as evidenced by her employment record and reviews.

42.     At all times relevant, including during the two years during which Ms. Farr worked remotely until her termination, Ms. Farr did not come into physical contact with any other Centene employees or clients, and her duties did not include a member-facing role.

43.     Ms. Farr further advised that she had successfully performed her role as Customer Service Director for approximately three (3) years at or in excess of Centene's reasonable expectations.

44.     As Centene's Customer Service Director, Ms. Farr's job duties included *inter alia* the direct management of multiple supervisor-level employees, a business analyst, and a trainer, and the indirect management of an additional twenty-eight (28) service representatives and customer service leads.  Ms. Farr was responsible for all aspects of the customer service department and was required to perform all job

functions remotely for approximately two (2) years up to and until her termination on February 4, 2022.

45.     Notably, Ms. Farr notified Centene that hundreds of employees who worked in Customer Service were permitted to continue working remotely, even after December 31, 2021 and throughout 2022, even though some of these employees had customer service and/or clinical roles requiring face-to-face engagement. To date, Centene still permits its customer service employees, including Ms. Farr's replacement, to work remotely.

46.     Because of this, and because of Centene's own record demonstrating its ability to have its employees work remotely, there is no dispute that Centene was entirely able to accommodate Ms. Farr without suffering an undue hardship.

47.     Ms. Farr specifically advised Centene that she was amenable to an array of reasonable accommodations, including continuing to work remotely, and further pointed out that none of the proposed accommodations would have imposed a financial burden on Centene, let alone a significant financial burden of the requisite magnitude to constitute an undue hardship.[3]

---

[3] In *Groff v. DeJoy, Postmaster General*, Slip Op. No 22-174, p. 3, n. 1 (June 29, 2023), the United States Supreme Court defined "undue hardship." In doing so, the Court considered the plain language of Title VII and the statutory intent of the term. Ultimately, the Court determined that "hardship," at a minimum, means "something hard to bear," and that under any definition is more severe than a "mere burden." *Id.* And by adding the qualifier "undue," the Court determined that Congress intended to raise the requisite burden to one of an "excessive" or "unjustifiable" level. *Id.* at p. 16 (citing Random House Dictionary, Webster's Dictionary, and American Heritage Dictionaries). Accordingly, the Court concluded that "undue burden" must refer to something more than a merely "de minimus" impact, i.e., "very small or trifling." *Id.* at p. 17 (citing Black's Law Dictionary). Thus, an "undue hardship" only exists whereas an employer can show that the burden of granting an accommodation would result in **substantial increased costs** in relation to the conduct of the particular business (at p. 18, citing Hardison at p. 83, n. 14).

48.     Centene nevertheless refused to accommodate Ms. Farr even though it was fully aware of her sincerely held religious beliefs and the conflict that existed between her beliefs and Centene's mandatory vaccination policy.

49.     On or about November 17, 2021, Centene responded to Ms. Farr's accommodation request by sending her a denial notice via email.

50.     No lawful basis existed to deny Ms. Farr's accommodation request.

51.     Ms. Farr provided Centene undeniably sufficient information concerning her sincerely held religious beliefs to place it on notice of the conflict that existed between her sincerely held religious beliefs and Centene's mandatory vaccination policy.

52.     Specifically, Ms. Farr provided information that placed Centene on notice of the religious nature of her beliefs, and she provided the details and lifelong faith she has practiced evidencing the sincerity of her beliefs.

53.     Indeed, absent a bona fide basis giving rise to a good faith doubt in the sincerity of her sincerely held religious beliefs, Centene is prohibited from inquiring as to the sincerity with which she holds her religious beliefs, yet Centene did so anyways.

54.     Despite no obligation to provide Centene with information to which it is not entitled, Ms. Farr indulged Centene and went above and beyond the legal requirements to request and become entitled to a reasonable accommodation, yet Centene still refused to accommodate her.

55.     Accommodating Ms. Farr did not impose any hardship upon Centene, let alone an "undue hardship".[4]

56.     Centene had no basis to doubt the religious nature of Ms. Farr's religious beliefs.

57.     Centene had no basis to doubt the sincerity with which Mc. Farr held and holds her sincere religious beliefs.

58.     Centene terminated Ms. Farr's employment because she is religious and because Ms. Farr sought an accommodation based on her sincerely held religious beliefs.

59.     Alternatively, Centene terminated Ms. Farr's employment because she opposed Centene's religiously-motivated discrimination and its refusal to provide her with a reasonable accommodation for her sincerely held religious beliefs despite being lawfully entitled to the same.

60.     Alternatively, Centene terminated Ms. Farr's employment because she was entitled to and otherwise needed a reasonable accommodation for her sincerely held religious beliefs based on the conflict between her beliefs and Centene's mandatory COVID-19 vaccination policy.

61.     At all times relevant, Ms. Farr satisfied or exceeded her employer's reasonable expectations concerning her job performance as evidenced by her performance reviews, including a performance review Centene issued that

---

[4] *See supra*, fn. 3, *Groff*, Slip Op. No 22-174, at 3, fn. 1 (defining "undue hardship").

exclusively pertained to her work she was and remains able to do so either with or without a reasonable accommodation.

62.    Specifically, Ms. Farr demonstrated her ability to perform the essential functions and duties of her job at or in excess of Centene's reasonable expectations as evidenced by factors including without limitation, her education, tenure, experience, work history, reviews, and 18-month record of performing her job in a remote capacity without issue.

63.    For the two years prior to her termination, Ms. Farr guaranteed she would pose absolutely zero risk of causing another Centene employee, colleague, co-worker, client, or other third-party engaged in business with Centene, to contract or transmit COVID-19 because she worked in a remote capacity and therefore, could not contract or transmit the virus to other persons outside of her home.

64.    In working from home, Centene made remote work an alternative COVID-19 mitigation protocol and in doing so, eliminated the threat transmitting COVID-19 posed to its employees substantially, if not entirely.

65.    The aforesaid mitigation protocol has an evidenced-based track record demonstrating its effectiveness and as well as a track record of the feasibility with which Centene is able permit its employees to work remotely.

66.    Based upon Centene's provision of remote work as a mitigation protocol and the continued provision of this mitigation protocol for more than eighteen (18) months during the height of the pandemic, it is not subject to reasonable dispute that

allowing Ms. Farr to work remotely does not impose upon Centene an undue hardship.

67. Ms. Farr has always been amenable, and Ms. Farr remains amenable, to working from home, and Centene was aware of her amenability to the same at all times relevant.

68. The reasonable religious accommodation Ms. Farr sought (i.e., working remotely) would not impose an undue hardship upon Centene.

69. The reasonable religious accommodation Ms. Farr requested (i.e., working remotely) does not, nor did it ever, impose an undue hardship upon Centene.

70. Ms. Farr's sincerely held religious beliefs are religious in nature and she explained her sincerely held religious beliefs in detail to Centene.

71. There is no dispute that the religious beliefs Ms. Farr asserted are in fact, beliefs that are religious in nature.

72. Ms. Farr's religious beliefs are sincerely held.

73. There is no dispute that Ms. Farr's religious beliefs are in fact, sincerely held.

74. Denying Ms. Farr's request for a religious accommodation and/or taking adverse employment action against Ms. Farr by *inter alia* terminating Ms. Farr's employment constitutes religious-based discrimination in violation of Title VII and the MHRA.

75. Refusing to provide Ms. Farr with a reasonable religious accommodation that does not impose an undue hardship despite the religious nature of Ms. Farr's

beliefs, the sincerity with which she holds her religious beliefs, and the conflict between her sincerely held religious beliefs and Centene's mandatory COVID-19 vaccination policy give rise to Ms. Farr's lawful entitlement to a reasonable accommodation and the deprivation of such an accommodation constitutes a violation of Title VII and the MHRA.

76.    As a religious person, Ms. Farr is a member of a constitutionally protected class (religion), and the protected class on the basis of religion is entitled to equal protection of law as other protected classes of persons, including those who are disabled.

77.    Refusing to reasonably accommodate Ms. Farr's sincerely held religious beliefs while allowing other Centene employees and contractors to work without becoming vaccinated constitutes disparate treatment in violation of Title VII and the MHRA.

78.    Refusing to provide Ms. Farr with an accommodation on the basis of her religion, while providing reasonable accommodations to other persons similarly situated on the basis of their religion constitutes disparate treatment in violation of Title VII and the MHRA.

79.    Refusing to provide Ms. Farr with an accommodation on the basis of her religion, while allowing other similarly situated, non-religious persons to continue their employment or contract-related work constitutes disparate treatment in violation of Title VII and the MHRA.

80.    Ms. Farr's beliefs are religious.

81.    Ms. Farr's religious beliefs are sincerely held.

82.    At all times relevant, Centene could reasonably accommodate and can reasonably accommodate Ms. Farr's religious beliefs through *inter alia* weekly testing, social distancing, and remote working.

83.    Accommodating Ms. Farr through *inter alia* weekly testing, social distancing, and remote working. does not impose an undue hardship upon Centene.

84.    Upon learning Ms. Farr was a religious person, Centene terminated her employment.

85.    After refusing to accommodate Ms. Farr's sincerely held religious beliefs, Centene terminated her employment.

## COUNT I
### RELIGIOUS DISCRIMINATION
### Violation of Title VII, 42 U.S.C. §§ 2000e, *et seq.*

86.    Ms. Farr re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

87.    Ms. Farr sincerely holds religious beliefs and is a member of a protected class based on her religion.

88.    Ms. Farr is an employee within the meaning of Title VII.

89.    Centene is an employer within the meaning of Title VII.

90.    Title VII forbids an employer from terminating an employee because of her need for religious accommodation, absent proof that granting the accommodation would cause it undue hardship.

91.     This extension of actionable religious discrimination to include a failure to accommodate derives from Title VII's definition of "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that she is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

92.     Here, Ms. Farr advised Centene of her sincerely held religious beliefs and that she sincerely believes abortion is a sin and as a result, she cannot in good faith or conscience knowingly inject a substance (i.e., any of the available COVID-19 vaccines) into her body that she knows was derived and/or created through the use of aborted fetal cell line tissue.

93.     Ms. Farr also advised Centene of her sincerely held religious beliefs and that she sincerely believes her body is a temple and she must adhere to her faith, conscience, and the fundamental teachings of her Church which instruct her to *inter alia* refrain from injecting unknown substances into her body, especially whereas her conscience advises that the risks of doing so outweigh any potential benefit derived from doing so.

94.     Ms. Farr also advised Centene of her sincerely held religious beliefs and that she sincerely believes that her body is not to be altered in any way other than through means by which God created or through scientifically proven, safe, and effective manmade and necessary medical intervention.

18

95.     Ms. Farr also advised Centene of her sincerely held religious beliefs and that she sincerely believes that consuming or knowingly injecting anything into her body that God did not create would constitute a sin and could prevent her ability from one day, going to Heaven and sharing that Place with God.

96.     Ms. Farr informed Centene of this conflict and expressly sought an accommodation.

97.     Centene had actual knowledge of Farr's sincerely held religious beliefs based on the correspondences exchanged concerning her religious accommodation request and denial letter thereto, as well as e-mails concerning her request for an accommodation and Ms. Farr's termination.

98.     At all times relevant, Ms. Farr was qualified, is qualified, and remains qualified to perform the essential functions of her job, unvaccinated. This is demonstrated by her seven (7) year history working for Centene, unvaccinated and without issue, including the two (2) year period Ms. Farr worked for Centene unvaccinated and throughout the pandemic preceding her termination.

99.     At all times relevant, Ms. Farr was qualified, is qualified, and remains qualified to perform the essential functions of her job with a reasonable accommodation. This is demonstrated by her two (2) year history working for Centene in a remote capacity and her ability to do so without a single complaint, reprimand, or negative performance review during the year and a half immediately preceding her termination.

100.   Because of her need for an accommodation due to her sincerely held religious beliefs, Centene took adverse employment action against Ms. Farr by *inter alia* terminating her employment. *See* 42 U.S.C. § 2000e-2(a)(1) (actionable adverse actions includes "discharg[ing]," an employee or otherwise discriminating with respect to the "terms" and "conditions" of employment).

101.   Because Ms. Farr requested an accommodation for her sincerely held religious beliefs, Centene took adverse employment action against her and *inter alia* terminated her employment. See 42 U.S.C. § 2000e-2(a)(1) (actionable adverse actions includes "discharg[ing]," an employee or otherwise discriminating with respect to the "terms" and "conditions" of employment).

102.   Centene made no efforts at all to accommodate Ms. Farr's sincerely held religious beliefs despite knowing of the conflict that existed between her sincerely held religious beliefs and Centene's mandatory COVID-19 vaccination policy.

103.   After refusing to make any efforts at all to accommodate Ms. Farr's sincerely held religious beliefs, Centene terminated Ms. Farr's employment because of the aforesaid conflict, because of her religion, because of her enjoyment of her Free Exercise right, because she opposed the unlawful discriminatory practices complained of herein, and/or because of her sincerely held religious beliefs.

104.   Centene's failure to produce any alternative therefore requires it to have accepted Ms. Farr's proposed accommodations absent a showing that providing any such accommodation imposed upon Centene an undue hardship.

105.    Accommodating Ms. Farr would not have imposed an undue hardship on Centene, as evidenced by the utilization of the COVID-19 mitigation protocols as discussed above and the non-existent financial costs associated with the aforesaid COVID-19 mitigation protocols.

106.    Accommodating Ms. Farr would not have imposed an undue hardship on Centene, as evidenced by the fact that vaccination did not achieve the objective for which Centene's mandatory COVID-19 vaccination policy purportedly sought to achieve. There is no dispute that vaccination status does not prevent the contraction or transmission of COVID-19, therefore whether an employee was vaccinated or unvaccinated bears no weight on the interest sought to be achieved through the policy underlying this action.

107.    Other corporations whose employees work in an entirely remote capacity have not insisted on mandatory vaccination without allowing accommodations for their employees who have sincerely held religious beliefs that conflicted with employment policies compelling the vaccination against COVID-19.

108.    As a direct and proximate result of the aforesaid complained of conduct and violation of Title VII, Ms. Farr sustained pecuniary and non-economic injuries in an amount of five-hundred thousand dollars, ($500,000.00), including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

<u>**COUNT II**</u>
**RELIGIOUS DISCRIMINATION**

### Violation of the MHRA. Mo. Code Regs. tit. 8 § 60-3.050

109.    Ms. Farr re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

110.    The Missouri Human Rights Act prohibits employers from discriminating on the basis of *inter alia* religion. Mo. Code Regs. tit. 8 § 60-3.050.

111.    Centene had actual knowledge of Farr's sincerely held religious beliefs based on the correspondences exchanged concerning her religious accommodation request and denial letter thereto, as well as e-mails concerning her request for an accommodation and Ms. Farr's termination.

112.    Ms. Farr experienced adverse employment action and a materially adverse change in the terms and conditions of her employment – namely, the termination of her employment – because of her sincerely held religious beliefs, her religion, and her opposition to unlawful employment practices such as the denial of accommodations requested by employees lawfully entitled to such accommodations.

113.    At all times relevant, Ms. Farr was qualified, is qualified, and remains qualified to perform the essential functions of her job, unvaccinated.

114.    At all times relevant, Ms. Farr was qualified, is qualified, and remains qualified to perform the essential functions of her job with a reasonable accommodation.

115.    Because of Ms. Farr's sincerely held religious beliefs, Centene took adverse employment action against her by *inter alia* refusing to accommodate her and terminating her employment.

116.    Providing a reasonable religious accommodation to Ms. Farr would not cause Centene to suffer an undue hardship as evidenced by Centene's ability to allow Ms. Farr to work remotely and her eighteen (18) month history of doing so without issue.

117.    All allegations set forth herein constitute a discrimination on the basis of religion.

118.    All allegations set forth herein constitute a failure to accommodate on the basis of religion.

119.    All allegations set forth herein constitute a violation of the MHRA's prohibition of religious discrimination and its prohibition of refusing to accommodate employees with sincerely held religious beliefs when no undue hardship exists.

120.    As a direct and proximate result of the aforesaid complained of conduct and violation of the MHRA, Ms. Farr sustained pecuniary and non-economic injuries in an amount of five-hundred thousand dollars ($500,000.00), including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Ms. Farr respectfully prays that this Honorable Court enter judgment in her favor, award such relief as to make Ms. Farr whole and remedy the aforesaid violations of Missouri and federal law, and hold Centene liable and in doing so, award all legal and equitable relief provided by law, including but not limited to:

A.    Issue a declaratory judgment that the practices complained of in this Complaint are unlawful and violate Title VII of the Civil Rights Act and the Missouri Human Rights Act;

B.    Enjoin Centene from pursuing its policy of making no religious accommodations to its oath requirement for its employees;

C.    Require Centene to adopt hiring and employment policies that comply with Title VII and the Missouri Human Rights Act, including the lawful requirement that employers reasonably accommodate their employees' sincerely held religious beliefs;

D.    Award Ms. Farr all appropriate and legally available monetary relief, including lost compensation and benefits, in an amount to be determined at trial but in an amount no less than five hundred thousand dollars ($500,000.00), to make her whole for the losses she suffered as a result of the unlawful conduct alleged in this Complaint;

E.    Award Ms. Farr any interest at the legal rate on such damages as appropriate, including pre- and post-judgment interest;

F.    Award compensatory damages to Ms. Farr to fully compensate her for the pain, suffering, and other expenses caused by the harmful conduct alleged in this Complaint;

G.    Award Ms. Farr a reasonable amount of attorney's fees for the work of her attorneys in pursuit of this action and the protection of her rights;

H.      Award Ms. Farr all costs, disbursements, and expenses she paid or that were incurred on her behalf;

I.      Award any such additional relief the Court deems just and proper; and

J.      Award any other relief as allowed by law.

### DEMAND FOR JURY TRIAL

Ms. Farr demands a trial by jury of all issues and each and every cause of action so triable.

Dated: December 10, 2023

Respectfully submitted,
**SUNDEE FARR**

By: /s/ MICHAEL A. YODER
Michael A. Yoder [1600519DC]
YODER LAVEGLIA LLP
2001 L St NW, Suite 500
Washington, D.C. 20036
Tel: (202) 875-2799
myoder@yoderlaveglia.com

*Counsel for Plaintiff*